IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) |
| | ) **Civil No:** 5:20-cv-00647 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID L. BERNHARDT, in his official capacity | ) |
| as Secretary of the United States Department of | ) **COMPLAINT FOR DECLARATORY** |
| the Interior; | ) **AND INJUNCTIVE RELIEF** |
| | ) |
| and | ) |
| | ) |
| U.S. FISH AND WILDLIFE SERVICE, | ) |
| | ) |
| Defendants. | ) |

INTRODUCTION

1. Plaintiff Center for Biological Diversity ("Center") brings this action under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, to challenge the Secretary of the Interior's ("Secretary") and the U.S. Fish and Wildlife Service's (collectively, "Defendants" or "FWS") failure to make timely final listing and critical habitat determinations for two highly-imperiled species as required under the ESA. 16 U.S.C. § 1533(b)(6)(A). These species are the Carolina madtom (*Noturus furiosus*), and Neuse River waterdog (*Necturus lewisi*).

2. In recent years, the madtom and waterdog have both experienced steep population declines and the loss of entire populations across their ranges due to a slew of threats, including sedimentation from urban and industrial development; confined animal feeding operation runoff and eutrophication; lost habitat and thermal alterations due to impoundments; irrigation-related

water diversions; and human population growth.

3. To obtain federal safeguards and habitat protections, on April 20, 2010 the Center and its allies submitted to FWS formal petitions to list these species as "endangered" or "threatened" pursuant to the ESA. On September 27, 2011, FWS made initial findings that the petitions presented substantial information to indicate that listing the madtom and waterdog "may be warranted." 16 U.S.C. § 1533(b)(3)(A); *see also* 76 Fed. Reg. 59,836 (Sept. 27, 2011). Subsequently, on May 22, 2019, FWS published in the Federal Register a proposed rule to list the Carolina madtom as Endangered; to list the Neuse River waterdog as Threatened; and to designate 995 river miles of critical habitat for the two species. Having reached that initial finding, FWS was therefore required but has failed to determine, within 12 months of its receipt of the petitions, whether listing these species under the ESA is "warranted." 16 U.S.C. § 1533(b)(3)(B). Consequently, Defendants are in violation of the ESA. *Id.*

4. To remedy these violations, the Center seeks an order declaring that Defendants are in violation of the ESA and directing Defendants to make, by a Court-ordered deadline, the overdue determinations of whether the madtom and waterdog must be protected under the ESA. Enforcement of the nondiscretionary deadlines of the ESA is necessary to ensure the survival and recovery of these species in the wild.

JURISDICTION

5. The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA's citizen suit provision), 5 U.S.C. § 702 (review of agency action under the APA), and 28 U.S.C. § 1331 (federal question jurisdiction).

6. The Court may grant the requested relief under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701-706; and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

7. By letter dated July 22, 2020, the Center provided 60 days' notice of its intent to file this suit pursuant to the citizen-suit provision of the ESA, 16 U.S.C. § 1540(g)(2)(C). Defendants have not remedied the violations to date, thus an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

VENUE

8. The U.S. District Court for the Eastern District of North Carolina is the proper venue for this action pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e). Defendants' violations of law occurred in this district, and a substantial part of the events giving rise to the Center's claim occurred in this district.

PARTIES

9. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a nonprofit organization that works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center is incorporated in California and headquartered in Tucson, Arizona, with field offices in: Alaska; Arizona; California; Florida; Hawaii; Idaho; Minnesota; Nevada; New Mexico; New York; North Carolina; Oregon; Washington; Washington, D.C.; and Baja California, Sur, Mexico. The Center has more than 74,000 members. The Center and its members have interests in the conservation of endangered and threatened species – including the Carolina madtom and Neuse River waterdog – and with the effective implementation of the ESA.

10. The Center has members who visit areas where the Carolina madtom and Neuse River waterdog still occur. The Center's members use these areas for observation of these species and other wildlife; research; nature photography; aesthetic enjoyment; and recreational, educational, and professional activities. One of these members is a watershed conservation

professional who has a professional interest in the protection of the habitat of these two species. He has visited and has plans to continue to travel to and recreate in areas where he can observe both of these species, and he will maintain an interest in these species and their habitats in the future.

11. In addition to submitting petitions to FWS to list these species under the ESA, the Center has campaigns to protect freshwater biodiversity in the southeastern United States and to raise awareness about the environmental impacts from human activities, including impacts to imperiled species. Likewise, the Center is actively engaged in efforts to protect native plants and animals from the effects of climate change. Protecting the species at issue under the ESA would further these campaigns.

12. The Center's conservation efforts are prompted by the concern that the Carolina madtom and Neuse River waterdog are at imminent risk of extinction. Defendants' failure to comply with the ESA's nondiscretionary deadline for issuing the requisite final listing determinations and critical habitat designations for these species deprives them of statutory protections that are vitally necessary to their survival and recovery. Until these species are protected under the ESA, the Center's interests in their conservation and recovery are impaired. Therefore, the Center's members and staff are injured by Defendants' failure to make a timely final determination as to whether listing these species is warranted, and by resulting harm to the species and their habitats in the absence of substantive legal protections. The professional, aesthetic, and recreational interests of Center members and staff in finding these species in the wild and knowing that they will survive and recover in the wild will continue to be impaired in the absence of the completion of Defendants' legal duties. The injuries described above are actual, concrete injuries presently suffered by the Center and its members, and they will continue

to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction, and the relief sought herein – an order compelling listing determinations and critical habitat designations for these species – would redress these injuries. The Center and its members have no other adequate remedy at law.

13. Defendant DAVID L. BERNHARDT is the Secretary of the United States Department of Interior and the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing and critical habitat decisions. David L. Bernhardt is sued in his official capacity.

14. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for most terrestrial and freshwater species and promptly complying with the ESA's mandatory listing deadlines.

## LEGAL BACKGROUND

15. The ESA is a comprehensive federal statute that declares endangered and threatened species of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species . . ." *Id*. § 1531(b).

16. To this end, section 4 of the ESA requires the secretaries of the departments of Interior and Commerce to protect imperiled species by listing them as either "endangered" or "threatened," and by designating their "critical habitat." *Id*. § 1533(a). A "species" includes

"any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16). The Secretary has delegated its administration of the ESA to FWS. 50 C.F.R. § 402.01.

17. The ESA's substantive protections apply only after FWS lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a listed species' "critical habitat," 16 U.S.C. § 1536(a)(2), which consists of areas that are essential to the conservation of the species. *Id.* §§ 1532(5)(A) and 1533(a)(3)(A). Section 9 of the ESA provides additional protections by prohibiting "any person" from engaging in the unlawful "take" of listed species without authorization from the Secretary. *Id.* §§ 1538(a)(1)(B) and 1539. Other provisions of the ESA require the Secretary to (1) "develop and implement" a "recovery plan" for every listed species, (2) authorize the Secretary to acquire land for the protection of listed species, and (3) make federal funds available to states to assist in their efforts to preserve and protect listed species. *Id.* §§ 1533(f), 1534, and 1535(d).

18. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition FWS to list species as endangered or threatened. The process includes mandatory, non-discretionary deadlines for findings that FWS must make so that imperiled species receive the ESA's substantive protections in a timely fashion. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

19. Within 90 days of receiving a listing petition, FWS must "to the maximum extent practicable," make an initial finding as to whether the petition "presents substantial scientific or

6

commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). If FWS finds that the petition does not present "substantial information" indicating that listing "may be warranted," the petition is rejected and the process ends. This is known as the 90-day finding.

20. However, if FWS finds that a petition presents substantial information indicating that listing may be warranted, the agency must conduct a thorough scientific review of the species' status. *Id*. Upon completion of this "status review," and within 12 months from the date that it receives the petition, FWS must make one of three findings: (1) listing is "not warranted;" (2) listing is "warranted;" or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain requirements are met. *Id.* § 1533(b)(3)(B). This is known as the 12-month finding.

21. If FWS's 12-month finding concludes that listing is warranted, the agency must publish notice of the proposed regulation to list the species as endangered or threatened, and/or to designate its protected "critical habitat" in the Federal Register for public comment. *Id.* § 1533(b)(3)(B)(ii).

22. Within one year of publication of the proposed regulation, the ESA requires FWS to render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, FWS must either list the species; withdraw the proposed listing rule; or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to gather more scientific information. *Id.* §§ 1533(b)(6)(A)(i), and (B)(i). This is known as the final listing determination.

23. The ESA's substantive protections cannot safeguard a species facing extinction until the species is formally listed as endangered or threatened. Therefore, it is critical that FWS

7

meticulously follow the ESA's listing procedures and deadlines so that species are protected in a timely manner and early enough to stem and reverse their trend toward extinction. Defendants have regularly ignored these statutory procedures and repeatedly missed statutory listing deadlines, leading to this litigation. The instant litigation is brought pursuant to the ESA's citizen-suit provision to ensure that the purposes of the ESA are met. 16 U.S.C. § 1540(g)(1)(C). This is the second lawsuit the Center has brought in order to enforce the ESA's deadlines on FWS with regards to the listing of the species at issue here.

## FACTUAL BACKGROUND

A. <u>Carolina Madtom</u>

24. The Carolina madtom is a small but feisty catfish whose scientific name translates to "the furious madtom," for the painful sting the fish can deliver to predators with the spines on its pectoral fins. At five inches long, this voracious fish is active at night, eating any animal it can fit in its mouth.

25. The Carolina madtom is primarily found under cover in moderately flowing, sand and gravel-lined streams and rivers. The species is endemic to the Neuse and Tar River watersheds in the Piedmont and Coastal Plain of North Carolina. The madtom has declined severely in the Neuse River watershed, and it is also in significant decline within the Tar River watershed. The fish is effectively extirpated from more than half of its range, and experts estimate its populations have declined by up to 75 percent from historical levels.

26. Threats to the Carolina madtom and its habitat are numerous and varied. They include sedimentation from logging and development; agricultural runoff and eutrophication, including from confined animal feeding operations; impoundments; irrigation-related water diversions; human population growth; and predation by the introduced, non-native flathead

catfish.

27. The Carolina madtom is listed as "threatened" by the State of North Carolina pursuant to the state's endangered species-protection law. N.C. Gen. Stat. §§ 113-331 *et seq.*; *see also* 15A N.C.A.C. §§ 10I.0101 *et seq.* NatureServe, an authoritative source of comprehensive data on biodiversity, classifies the Carolina madtom as "imperiled." The Southeastern Fishes Council, a nonprofit scientific organization dedicated to the study and conservation of freshwater and coastal fishes of the southeastern United States, recommends "threatened" status for this fish due to its limited range and multiple threats. Lastly, the American Fisheries Society, also a nonprofit organization with a focus on biodiversity science for fish species, ranks the Carolina madtom as "threatened" due to its small range.

28. The Center submitted a petition to FWS on April 20, 2010, requesting FWS to list the Carolina madtom as endangered or threatened under the ESA due to the ongoing threats to its existence.

29. FWS issued a 90-day finding on the Center's petition to list the Carolina madtom on September 27, 2011. The 90-day finding concluded that the Center's petition presented "substantial information" indicating that listing the Carolina madtom "may be warranted." 76 Fed. Reg. 59,836 (Sept. 27, 2011).

30. Having made the positive 90-day finding, FWS was required to make a 12-month finding by April 20, 2011 as to whether listing the Carolina madtom as endangered or threatened is, in fact, "warranted," 16 U.S.C. § 1533(b)(3)(B), but still had not done so when, on April 3, 2018, the Center filed suit in this jurisdiction to enforce the 12-month deadline. Case No. 5:18-CV-00140-D.

31. On May 22, 2019, under pressure from the Center's litigation, FWS published its

12-month finding for the Carolina madtom in the Federal Register, determining that listing the madtom is "warranted." 84 Fed. Reg. 23,644 (May 22, 2019). Therein, FWS published a proposed rule to list the Carolina madtom as endangered pursuant to the ESA, and to designate 257 river miles of critical habitat for the species within North Carolina. *Id.*

32. Having made the "warranted" 12-month finding, FWS was required to publish a final rule listing the Carolina madtom within one year, 16 U.S.C. § 1533(b)(6)(A)(i), and (B)(i), but still has not done so.

33. To date, more than a year after publishing its notice of the proposed rule for the madtom, FWS has issued no final determination on its proposal and has not invoked any valid exemption to this mandatory duty. Thus, FWS is in violation of the ESA. *Id.*

B. <u>Neuse River Waterdog</u>

34. The Neuse River waterdog is an aquatic salamander with flame-like gill extensions, a whip for a tail, and legendary hunting abilities. The species grows up to a foot long and is known to hunt everything from lampreys and worm snakes to centipedes, crayfish, salamanders, snails, fishes, and spiders.

35. Like the Carolina madtom, the Neuse River waterdog is endemic to the Neuse River and Tar River drainages of eastern North Carolina. The waterdog is also in steep decline, with entire populations already lost due to habitat destruction and water pollution.

36. The Neuse River waterdog is found in areas of submerged leaf litter and other cover in the eddies and backwaters of larger streams in the Piedmont and Coastal Plain. Threats to the Neuse River waterdog are numerous and varied, including water channelization and impoundments; runoff and sedimentation from development, confined animal feeding operations, traditional agricultural activities and forestry; water withdrawals for irrigation;

chemical pollution; heightened UV-B radiation; and human population growth.

37. The State of North Carolina recognizes the Neuse River waterdog as a Species of Special Concern. However, no populations of the waterdog currently enjoy any special protections.

38. The Center submitted a petition to FWS on April 20, 2010, requesting FWS to list the Neuse River waterdog as endangered or threatened under the ESA due to the ongoing threats to its existence.

39. FWS issued a 90-day finding on the Center's petition to list the Neuse River waterdog on September 27, 2011. The finding concluded that the Center's petition presented "substantial information" indicating that listing the Neuse River waterdog "may be warranted." 76 Fed. Reg. 59,836 (Sept. 27, 2011).

40. Having made the positive 90-day finding, FWS was required to make a 12-month finding by April 20, 2011 as to whether listing the Neuse River waterdog as endangered or threatened is, in fact, "warranted," 16 U.S.C. § 1533(b)(3)(B), but still had not done so when, on April 3, 2018, the Center filed suit in this jurisdiction to enforce the 12-month deadline. Case No. 5:18-CV-00140-D.

41. On May 22, 2019, under pressure from the Center's litigation, FWS published its 12-month finding for the Neuse River waterdog in the Federal Register, determining that listing the waterdog is "warranted." 84 Fed. Reg. 23,644 (May 22, 2019). Therein, FWS published notice of a proposed rule to list the Neuse River waterdog as threatened pursuant to the ESA, and to designate 738 river miles of critical habitat essential to the conservation of the species within the state of North Carolina. *Id.*

42. To date, more than a year after publishing its notice of the proposed rule for the

waterdog, FWS has issued no final determination on its proposal and has not delayed its final determination to seek more scientific information. Thus, FWS is in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A)(i), and (B)(i).

CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

Violation of the ESA and Administrative Procedure Act: Failure to Make a Timely Final Determination for the Listing and Critical Habitat Designation of the Carolina Madtom

43. Plaintiff hereby incorporates all preceding paragraphs.

44. FWS's failure to make a timely final determination regarding its proposed listing of the Carolina madtom as an endangered species and designation of critical habitat for same violates the ESA, 16 U.S.C. § 1533(b)(6)(A)(i), and (B)(i), and/or constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

SECOND CLAIM FOR RELIEF

Violation of the ESA and Administrative Procedure Act: Failure to Make a Timely Final Determination for the Listing and Critical Habitat Designation of the Neuse River Waterdog

45. Plaintiff hereby incorporates all preceding paragraphs.

46. FWS's failure to make a timely final determination regarding its proposed listing of the Neuse River waterdog as a threatened species and designation of critical habitat for same violates the ESA, 16 U.S.C. § 1533(b)(6)(A)(i), and (B)(i), and/or constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter Judgment for Plaintiff providing the following relief:

A.     Declare that Defendants violated the ESA and/or the APA by failing to issue timely final determinations for the listing and critical habitat designation for the Carolina madtom and Neuse River waterdog;

B.     Order Defendants to issue, by dates certain, final determinations for the listing and critical habitat designation for the Carolina madtom and Neuse River waterdog, 16 U.S.C. § 1533(b)(6)(A)(i), and (B)(i);

C.     Grant Plaintiff its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D.     Provide such other relief as the Court deems just and proper.

Dated: December 1, 2020          Respectfully submitted,

/s/ Perrin W. de Jong
Perrin W. de Jong
Center for Biological Diversity
P.O. Box 6414
Asheville, NC 28816
Telephone: (828)252-4646
Facsimile: (828)537-4289
Email: perrin@biologicaldiversity.org
N.C. Bar No. 42773

/s/ Amy R. Atwood
Amy R. Atwood (*Special Status* pending)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Telephone: (971) 717-6401
Facsimile: (503) 283-5528
Email: atwood@biologicaldiversity.org
D.C. Bar No. 470258

*Counsel for the Plaintiff*